**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ROSETTA GENOMICS, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11316 (LSS) |
| DON A. BESKRONE, not individually, but solely as Chapter 7 trustee for ROSETTA GENOMICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>Kenneth A. Berlin, Ron Kalfus, and Brian Markison,<br><br>Defendants. | **REFER TO SUMMONS** |

**COMPLAINT FOR DAMAGES**

Don A. Beskrone, as Chapter 7 Trustee ("Trustee") for Debtor Rosetta Genomics, Inc. ("Rosetta Inc"), by and through his undersigned counsel, files this Complaint (the "Complaint") for damages for breach of fiduciary duty, gross negligence and fraud against Kenneth A. Berlin, Brian Markison, and Ron Kalfus (collectively the "Defendants"). In support of this Complaint, Trustee alleges upon information and belief that:

**NATURE OF THE CASE**

1.      This case arises out of Defendants' breach of fiduciary duty, gross negligence and fraud in connection with false reimbursement claims to numerous commercial insurers and Medicare, investments made by two investment funds and a failed merger with a company called Genoptix, Inc. ("Genoptix"). Defendants approved and caused Rosetta Genomics, Ltd. ("Rosetta Ltd") to enter into agreements with the investment funds and with Genoptix despite knowledge (or

reason to know) of material facts about its flagship product that they misrepresented and/or omitted and failed to disclose to the investment funds and Genoptix. As a result of Defendants' wrongdoing, the investment funds, Rosetta Inc (and its creditors) and Rosetta Ltd (and its creditors) (together "Rosetta") have been damaged.

2.      Trustee hereby brings claims (i) on behalf of the estate of Rosetta Inc against Defendants Berlin and Kalfus for their breach of fiduciary duty and gross negligence, (ii) on behalf of the estate of Rosetta Ltd against all Defendants for their breach of fiduciary duty and gross negligence and negligent misrepresentation, (iii) on behalf of both estates against all Defendants for fraud in connection with the merger transaction, and (iv) as the assignee of the investment funds' claims, against all Defendants for their material misstatements and omissions in connection with the transactions with the investment funds.

3.      In 2016, 2017 and 2018 Defendants induced Sabby Healthcare Master Fund, Ltd. and Sabby Volatility Warrant Master Fund, Ltd. to invest millions of dollars in Rosetta Ltd, through a series of securities purchase agreements and the purchase of stock.  Also, in 2017 and 2018, Defendants induced Genoptix to enter into Agreements and Plans of Merger with Rosetta Ltd.  In connection therewith, the officers of Rosetta Ltd and its subsidiary, Rosetta Inc, caused Rosetta Inc to sell its subsidiaries to and commit to a bridge loan from Genoptix.

4.      These transactions were undertaken after Defendants knew or should have known that Rosetta Inc's RosettaGX Reveal MicroRNA Thyroid test ("Reveal"), its primary intellectual property and source of revenue described in public filings as its "best path to profitability," was being falsely coded in claims to commercial carriers and Medicare as "Cancer Origin," an earlier, unrelated test designed to identify a tumor's organ of origin.  The Cancer Origin test was far more reliably reimbursed by both commercial carriers and Medicare.   The Cancer Origin test was

covered by a "Local Coverage Determination" ("LCD"), entitling Rosetta Inc to automatic reimbursement for performing the tests. Reveal was not covered by a "Local Coverage Determination" and, when properly coded, was rarely reimbursed.

5.      The result of the false coding was drastic overpayment of Reveal claims, particularly by Medicare. Taking Rosetta's own representations, by and through Defendants, regarding its Medicare reimbursement rate on Reveal prior to mid-2017 at face value, Cancer Origin coded Reveal tests were reimbursed in more than 90% of cases. After the false coding was discovered, Medicare reimbursement plummeted immediately and was less than 5% by February 2018. Rosetta's internal documents, including communications from Defendant Berlin to Rosetta's general counsel, conclusively establish that the "Cancer Origin" coding of Reveal tests was false "from Day One," Defendants knew or should have known it was false "from Day One," and Defendants knew the coding was false no later than mid-June 2017.

6.      In June 2017, Defendants learned that the false coding of Reveal was under scrutiny, purported to launch an "internal investigation" of Rosetta's Medicare billing practices, and purported to "fix" the coding. To the extent Defendants in fact ceased falsely coding Reveal as Cancer Origin, the impact on reimbursement rates and revenues was obvious, immediate and severe. Perhaps for this reason, at least one Reveal test was falsely coded as "Cancer Origin" months after the "fix" in June 2017. It was subjected to significantly greater scrutiny by Medicare's service providers, which were evidently aware by that time of the false claims under the LCD and denied on the ground that there was no basis for the "Cancer Origin" test. Despite internal acknowledgement that Reveal should not be coded "Cancer Origin," Defendants appealed the determination repeatedly.

7.      Defendants, with full knowledge of both the false coding and its impact on reimbursement rates, caused Rosetta to enter into multiple Stock Purchase Agreements with Sabby and caused Rosetta to enter merger, sale and financing agreements with Genoptix without disclosing the issue, the impact on reimbursement rates and the material impact on its revenues. Defendants induced Sabby and Genoptix to enter these agreements by making knowingly false and misleading statements regarding Rosetta's reimbursement rates and revenues.

8.      Defendants also signed Rosetta Ltd's public filings, which not only failed to disclose this material information but affirmatively misrepresented its revenues.  In October 2017, four months after their false Reveal claims either ceased or ceased being successful and with knowledge of the precipitous decline in reimbursements and revenue, Defendants signed a Form 6-K filed with the SEC stating "preliminary" third quarter 2017 revenue approximately 25% *higher* than Rosetta Ltd's second quarter revenue.  Defendants accomplished this by recognizing *100% of third quarter Medicare claims* as revenue, which (i) more than doubled the average reimbursement rate of Reveal since inception, a violation of GAAP rules so clear that Rosetta's accountant, Ernst and Young, later refused to explain it to Genoptix and (ii) was a knowing misrepresentation of Reveal's reimbursement rate when properly coded, which approached 0%.

9.      Defendants knowingly made or caused Rosetta Ltd or Rosetta Inc to make false representations and warranties in every one of the agreements with Sabby and Genoptix.  Sabby was also entitled to rely upon Rosetta Ltd's registration statements, each of which contained materially false or misleading information.  Sabby relied upon this information in investing millions of dollars in Rosetta Ltd and was injured thereby.

10.      In desperate pursuit of the merger with Genoptix, Defendants also caused Rosetta Inc, to sell off assets, including its testing laboratory, to Genoptix.  These transactions were in

furtherance of the merger, which Defendants knew or should have known would not be completed once Genoptix discovered their material misrepresentations.

11.     After Genoptix, in the course of its own due diligence and with no disclosure of any kind by Defendants, discovered the false claims, the drastic and undisclosed decline in reimbursement rates, and the materially false financial statements, the merger between Rosetta Ltd and Genoptix failed, causing Rosetta Ltd and Rosetta Inc to file for bankruptcy, thereby further damaging Rosetta Inc, its creditors, Rosetta Ltd, its creditors, Sabby Healthcare Master Fund, Ltd. and Sabby Volatility Warrant Master Fund, Ltd.

## JURISDICTION AND VENUE

12.     The United States Bankruptcy Court for the District of Delaware (the "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1332 and 1334(b).

13.     Pursuant to 28 U.S.C. §§ 157 and 1334(b), this adversary proceeding is related to a case under title 11 of the United States Code.

14.     The Court has personal jurisdiction over Defendants, each of whom are United States citizens, are officers and/or directors of a Delaware corporation (or its parent) and the claims against them involve their actions undertaken in the United States in their official capacities as officers and/or directors.

15.     Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

16.     The Trustee is the Chapter 7 Trustee for the Debtor and the Debtor's estate.  The Debtor is a Delaware corporation and has its principal place of business in the State of Pennsylvania.  The Trustee is a citizen of the State of Delaware.

17.    Defendant Kenneth A. Berlin served as the Chief Executive Officer and President of Rosetta Genomics, Ltd. ("Rosetta Ltd.") from November 2, 2009 until April 18, 2018. Defendant Berlin also served as the Sole Director of Debtor.  Defendant Berlin is a citizen of the state of New Jersey.

18.    Defendant Ron Kalfus served as the Chief Financial Officer of Rosetta Ltd. and Debtor at all times relevant to this proceeding.  Defendant Kalfus is a citizen of the state of New Jersey.

19.    Defendant Brian Markison served as Chairman of the Board of Directors of Rosetta Ltd. at all times relevant to this proceeding.  Defendant Markison is a citizen of the State of New Jersey.

20.    Non-parties Sabby Healthcare Master Fund, Ltd. and Sabby Volatility Warrant Master Fund, Ltd. are investment vehicles that were organized in the Cayman Islands (collectively "Sabby") and have their principal place of business in the State of New Jersey.

21.    Non-party Rosetta Ltd is an Israeli company that created, under Delaware Corporation Law, wholly owned subsidiary corporations, including the Debtor, and operated its Delaware subsidiaries, including the Debtor, through which it sought to commercialize and expand its business in the United States.

## BACKGROUND

22.    On May 31, 2018 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of title 11 of the Bankruptcy Code in this Court (*In re Rosetta Genomics, Inc.,* No. 1:18-BK-11316 (Bnkr. D.Del) Doc. 1).

23.     On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs (the "Schedules and Statements") (*In re Rosetta Genomics, Inc.,* No. 1:18-BK-11316 (Bnkr. D.Del) Doc. 5 and 6).

24.     Thereafter, Don A. Beskrone was appointed to serve as the interim Chapter 7 trustee in this case (the "Trustee").  On July 18, 2018, a meeting of creditors (the "341 Meeting") was held pursuant to 11 U.S.C. § 341(a) (*In re Rosetta Genomics, Inc.,* No. 1:18-BK-11316 (Bnkr. D.Del) Doc. 30), and the Trustee now serves as the permanent trustee of this case pursuant to 11 U.S.C. § 702(d).

25.     The Trustee was vested with and holds, among other things, all rights of the Debtor and its estate to prosecute and settle, subject to Bankruptcy Court approval, all claims and causes of action of the Debtor.

26.     The Debtor is a wholly-owned subsidiary of Rosetta Ltd, an Israeli limited company. On the Petition Date, Rosetta Ltd filed separate liquidation proceedings in Israel before the District Court in Lod (the "Israeli Court"). Teddy Erez was appointed Israeli Liquidator of Rosetta Ltd, and Amit Pines now serves as the Israeli Liquidator as the successor to Teddy Erez.

27.     The Israeli Liquidator was vested with and holds, among other things, all rights of Rosetta Ltd and its estate to prosecute and settle, subject to Israeli Court approval, all claims and causes of action of Rosetta Ltd.

28.     At the 341 Meeting, the Debtor's CFO, Ron Kalfus, testified that the Debtor failed to operate profitably in the years prior to the Petition Date and was insolvent.  To address its financial condition, the Debtor pursued a number of options, including sale or merger with other companies.  However, these efforts failed to come to fruition.  When a proposed merger between

Rosetta Ltd and Genoptix failed to be consummated, the Debtor was forced to file for Chapter 7 Bankruptcy liquidation.

29.     The Debtor's insolvency in the years prior to the Petition Date was such that its Schedules and Statements show assets of $696,396.42.   The Debtor's claims register shows $53,667,345.75 worth of claims filed against Debtor.

30.     On July 9, 2018, the Trustee filed the Notice of Conversion from No Asset to Asset Case and Request to the Clerk to Fix a Bar Date to File Claims against the Debtor's Estate (*In re Rosetta Genomics, Inc.,* No. 1:18-BK-11316 (Bnkr. D.Del) Doc. 20).

31.     Pursuant to the Order Approving Motion of Don A. Beskrone, Chapter 7 Trustee, for an Order, Pursuant to 11 U.S.C. §§ 105, 327, 328 and 363 (I) Authorizing the Retention of Heritage Global Partners, Inc. as Auctioneer Nunc Pro Tunc to June 28, 2018 And (II) Approving the Sale of Assets (*In re Rosetta Genomics, Inc.,* No. 1:18-BK-11316 (Bnkr. D.Del) Doc. 47) (the "HGP Retention and Sale Order"), on or about August 9, 2018, an auction of the Debtor's assets was conducted.  As set forth in the Trustee's Notice of Filing Auction/Sale Report (*In re Rosetta Genomics, Inc.,* No. 1:18-BK-11316 (Bnkr. D.Del) Doc. 56, filed 10/1/18), the auction of the Debtor's assets raised net proceeds of $150,010.50, further emphasizing the extent and degree of the Debtor's insolvency.

32.     As set forth in the Petition and the Schedules and Statements, the Debtor is a Delaware corporation whose principal place of business was located in Philadelphia, Pennsylvania. Prior to the Petition Date, the Trustee understands that, among other things, the Debtor developed diagnostic tests designed to differentiate between various types of cancer.

33.     As a result of its Chapter 7 Bankruptcy filing, the Debtor has ceased operations and no longer has employees.

34.     On or about May 14, 2021, Sabby assigned any and all claims against Rosetta Ltd's and Debtor's officers, directors, employees and third parties to the Trustee.  On May 27, 2021, the Bankruptcy Court overseeing Debtor's Chapter 7 Bankruptcy authorized the Trustee to enter into the agreement to take assignment of and prosecute direct claims of Sabby.

35.     On May 28, 2021, the Trustee timely initiated an action in the United States District Court for the Southern District of New York ("SDNY") for, *inter alia*, breach of fiduciary duty and negligent misrepresentation against numerous officers and directors of Debtor and Rosetta, Ltd., including Defendants herein, based on his good faith belief that the SDNY was an appropriate forum as the alleged unlawful acts and omissions concerned the various agreements at issue, which contained New York choice of law and New York choice of forum provisions applicable to Rosetta's directors and officers (*Beskrone v. Berlin et al.*, No.1:21-cv-04803-PAE (S.D.N.Y.) (the "SDNY Action").

36.     Defendants moved to dismiss the complaint on December 2, 2021, the Trustee filed an amended complaint on December 23, 2021 and Defendants moved to dismiss the amended complaint on January 13, 2022.

37.     In late January 2022, the Trustee and the Israeli Liquidator for Rosetta Ltd reached an agreement in principle (the "Assignment"), subject to approval by the Israeli Court and the Bankruptcy Court, pursuant to which the Israeli Liquidator agreed to assign to the Trustee Rosetta Ltd's direct claims against its former officers and directors (the "RGL Claims").

38.     On February 2, 2022, the Bankruptcy Court granted the Trustee's motion for authorization to take Assignment of the RGL Claims from Rosetta Ltd's Israeli Liquidator.

39.     On February 8, 2022, the Israeli Court approved the Israeli Liquidator's entry into the Assignment.

40.    On February 9, 2022, pursuant to the approval of the Bankruptcy Court and Israeli Court, the Trustee and Israeli Liquidator entered the Assignment.

41.    On March 16, 2022, the Trustee filed a Second Amended Complaint in the SDNY Action against Defendants alleging claims for breach of fiduciary duty, fraud, gross negligence, and negligent misrepresentation identical to the claims alleged herein.

42.    Defendants moved to dismiss the Second Amended Complaint and in an Order and Opinion dated February 15, 2023, the Court dismissed the SDNY Action for lack of personal jurisdiction without prejudice to the Trustee's right to pursue his claims against Defendants in a forum consistent with the exercise of personal jurisdiction (*Beskrone v. Berlin et al.*, No.1:21-cv-04803-PAE (S.D.N.Y.) (Doc. 84).

### FACTS SUPPORTING CLAIMS

43.    According to its Form 20-F filed with the U.S. Securities and Exchange Commission (the "SEC) on March 23, 2016, Rosetta Ltd. "seek[s] to develop and commercialize new diagnostic tests based on various genomics markers, including DNA, microRNA and protein biomarkers and using various technologies, including, qPCR, microarrays, Next Generation Sequencing (NGS) and Fluorescence In Situ Hybridization (FISH)."  One such diagnostic test based on its proprietary microRNA technologies was RosettaGX Reveal ("Reveal").  Also, according to the Form 20-F, Debtor's, along with two of its subsidiaries', "principal business activities … [were] to commercialize [Rosetta Ltd.'s] products, perform tests in its CLIA-approved laboratories and expand the business of [Rosetta Ltd.] in the United States."

**Reveal**

44.    Debtor's significant assets were its subsidiaries, Minuet Diagnostics, Inc. and CynoGen, Inc. and Reveal, which in 2017 was responsible for more than 75%-85% of its purported

revenues. From "Day One," however, Rosetta's reimbursement claims to both commercial insurers and Medicare falsely coded Reveal as "Cancer Origin", an earlier, unrelated test designed to identify a tumor's organ of origin. The Cancer Origin test was far more reliably reimbursed by both commercial carriers and Medicare. As Rosetta Ltd stated in its 2016 20-F, in 2012 "the designated Medicare Administrative Contractor, or MAC, with jurisdiction for the RosettaGX Cancer Origin TestTM … established a reimbursement rate for the test [and] formalized its coverage decision in a Local Coverage Determination (LCD) effective August 1, 2013." Consequently, "the designated Medicare Administrative Contractor, or MAC, for RosettaGX Cancer Origin is covering this test for all Medicare beneficiaries, and we are receiving approved payments for claims submitted."

45.     This was not true of Reveal. Because Cancer Origin had an LCD, Rosetta automatic reimbursement for performing the tests. Reveal was not covered by an LCD and, when properly coded, was rarely reimbursed. The result of the false coding was drastic overpayment of Reveal claims, particularly by Medicare. Taking Rosetta's own representations regarding its Medicare reimbursement rate on Reveal prior to mid-2017 at face value, Cancer Origin coded Reveal tests were reimbursed in more than 90% of cases. After the false coding was discovered, Medicare reimbursement plummeted immediately and was less than 5% by February 2018. Rosetta's internal documents, including communications from Defendant Berlin to Rosetta's general counsel, conclusively establish that the "Cancer Origin" coding of Reveal tests was false "from Day One" and Defendants knew or should have known it was false "from Day One." and Defendants knew the coding was false no later than mid-June 2017.

46.     As insurance reimbursements, particularly by Medicare, made up the vast majority of Reveal revenue and Reveal revenue in turn made up the vast majority of Rosetta's revenue in

2016 and 2017, Defendants knew or should have known that financial statements and other disclosures of revenue were inflated, subject to significant risk, and subject to overpayment claims.

47.     On September 26, 2016, Defendants caused Rosetta Ltd., to file Form 6-K with the SEC, signed by its then-CFO Ron Kalfus, with Rosetta Ltd's June 30, 2016 unaudited financial statements.  Rosetta Ltd reported revenues and "gross billings" on Reveal, which was the focus of its accompanying press release filed with the SEC but failed to disclose that it was falsely coding Reveal claims as "Cancer Origin" and that this false coding had led to drastically inflated reimbursement rates.  The June 30, 2016 6-K was materially false and misleading.

**The Sabby Transactions**

48.     On or about November 23, 2016, Rosetta Ltd. entered into a Securities Purchase Agreement with Sabby (the "2016 SPA"), by which Sabby agreed to purchase (i) an aggregate of 1,095,000 of Rosetta Ltd.'s ordinary shares at a purchase price of $0.50 per share and an aggregate principal amount of $3,160,000 unsecured convertible debentures in a registered direct offering and (ii) warrants to purchase up to 10,000,000 ordinary shares with an initial exercise price of $0.85 per share and an aggregate principal amount of $1,292,500 unsecured convertible debentures in a concurrent private placement.  In connection therewith, Sabby tendered $3,160,000 to Rosetta Ltd. in exchange for 1,095,000 ordinary shares and the warrants.

49.     The 2016 SPA was executed by Defendant Berlin, who personally induced Sabby to enter into it and made numerous materially false and misleading statements regarding Rosetta Ltd's business operations, revenues, assets and liabilities.  At no time did Berlin disclose that his statements regarding the foregoing were materially impacted by the false coding of Reveal.

50.     The 2016 SPA was a direct placement subject to Rosetta Ltd's then-current

Registration Statement, Commission File No. 333-210366, including, by incorporation, the 2016

6-K, the Prospectus and Prospectus Supplement:

> Issuance of the Securities; Registration. The Securities are duly
> authorized and, when issued and paid for in accordance with the
> applicable Transaction Documents, will be duly and validly issued,
> fully paid and nonassessable, free and clear of all Liens imposed by
> the Company other than restrictions on transfer with respect to the
> Warrants, Warrant Shares, Private Placement Debentures and
> Underlying Shares issuable upon conversion thereof provided for
> in this Agreement and such Transaction Documents Warrants. The
> Warrant Shares, when issued and paid for in accordance with the
> terms of the Warrants, will be validly issued, fully paid and
> nonassessable, free and clear of all Liens imposed by the Company
> other than restrictions on transfer provided for in this Agreement
> and the Warrants. The Company has reserved from its duly
> authorized capital stock a number of shares of Common Stock
> issuable pursuant to the Transaction Documents equal to at least
> the Required Minimum. The Company has prepared and filed the
> Registration Statement in conformity with the requirements of the
> Securities Act, which became effective on March 30, 2016 (the
> "Effective Date"), including the Prospectus, and such amendments
> and supplements thereto as may have been required to the date of
> this Agreement. The Registration Statement is effective under the
> Securities Act and no stop order preventing or suspending the
> effectiveness of the Registration Statement or suspending or
> preventing the use of the Prospectus has been issued by the
> Commission and no proceedings for that purpose have been
> instituted or, to the knowledge of the Company, are threatened by
> the Commission. The Company, if required by the rules and
> regulations of the Commission, shall file the Prospectus with the
> Commission pursuant to Rule 424(b). At the time the Registration
> Statement and any amendments thereto became effective, at the
> date of this Agreement and at the applicable Closing Date, the
> Registration Statement and any amendments thereto conformed and
> will conform in all material respects to the requirements of the
> Securities Act and did not and will not contain any untrue statement
> of a material fact or omit to state any material fact required to be
> stated therein or necessary to make the statements therein not
> misleading; and the Prospectus and any amendments or
> supplements thereto, at time the Prospectus or any amendment or
> supplement thereto was issued and at the applicable Closing Date,

conformed and will conform in all material respects to the requirements of the Securities Act and did not and will not contain an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading.

51.     As set forth above, Rosetta Ltd's then-current Registration Statement, including the Prospectus and Prospectus Supplement that failed to disclose that the Reveal test and all reimbursements and revenues related thereto were the result of false reimbursement claims, was materially false and misleading.

52.     Rosetta Ltd warranted and represented that its financial statements, including unaudited financial statements, complied with GAAP and "fairly present in all material respects the financial position of the Company and its consolidated subsidiaries as of and for the dates thereof and the results of operations and cash flows for the periods then ended, subject, in the case of unaudited financial statements, to normal, immaterial, year-end audit adjustments."  This section of the 2016 SPA was substantively identical to the representations of later SPAs between Sabby and Rosetta Ltd, as quoted in full below.

53.     As set forth above, Rosetta Ltd's June 30, 2016 6-K contained materially false and misleading statements and did not comply with GAAP standards.

54.     Rosetta Ltd warranted and represented that "since the date of the latest audited financial statements…except as specifically disclosed in the Disclosure Schedules, (i) there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect" and "no event, liability, fact, circumstance, occurrence or development has occurred or exists or is reasonably expected to occur or exist with respect to the Company or its Subsidiaries or their respective businesses, prospects, properties, operations, assets or financial condition that would be required to be disclosed by the Company under applicable

securities laws at the time this representation is made or deemed made that has not been publicly disclosed."

55.     As set forth above, between "the latest audited financial statements" and the SPA Rosetta Ltd had begun falsely coding Reveal as Cancer Origin in its reimbursement claims to both Medicare and commercial insurers and other payors, which incurred significant material risk and had a direct and substantial material impact on Rosetta Ltd's business, operations, revenues, and liabilities.

56.     Rosetta Ltd warranted and represented:

> <u>Disclosure</u>. Except with respect to the material terms and conditions of the transactions contemplated by the Transaction Documents, the Company confirms that neither it nor any other Person acting on its behalf has provided any of the Purchasers or their agents or counsel with any information that it believes constitutes or might constitute material, non- public information which is not otherwise disclosed in the Prospectus Supplement. The Company understands and confirms that the Purchasers will rely on the foregoing representation in effecting transactions in securities of the Company. All of the disclosure furnished by or on behalf of the Company to the Purchasers regarding the Company and its Subsidiaries, their respective businesses and the transactions contemplated hereby, including the Disclosure Schedules to this Agreement, is true and correct and does not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading. The press releases disseminated by the Company during the twelve months preceding the date of this Agreement taken as a whole do not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made and when made, not misleading. The Company acknowledges and agrees that no Purchaser makes or has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in Section 3.2 hereof.

57.     As set forth above, Rosetta Ltd's disclosures and press releases, including the release filed with the June 30, 2016 6-K, were materially false and misleading with respect to the Reveal test and omitted the material fact that Reveal reimbursements and revenue were based upon the filing of false claims.

58.     The 2016 SPA continued numerous other representations and warranties regarding its accounting and controls, solvency, and regulatory compliance that were materially false and misleading as set forth above.

59.     As Rosetta Ltd acknowledged, "t[he Company understands and confirms that the Purchasers will rely on the foregoing representations in effecting transactions in securities of the Company."  Sabby was induced to enter into the Securities Purchase Agreement by, and relied upon, financial statements, registration statements, public statements, and representations and warranties regarding Rosetta Ltd's operations, liabilities, assets and revenues.  Each of these statements was knowingly false, overstated Rosetta Ltd's present and future revenues, and failed to disclose that Defendants were miscoding or causing Rosetta to miscode the Reveal test as Cancer Origin in order to receive Medicare reimbursements Rosetta would not otherwise have received.  Defendants were at all times aware that the Reveal test coding was likely to be discovered, materially impacting Rosetta Ltd's current and future reimbursements and potentially leading to regulatory action and civil and criminal liability.

60.     The 2016 SPA, including more than $3 million in debentures, was expressly guaranteed by Rosetta Ltd's subsidiary, Rosetta Inc, and its Delaware subsidiaries.  Pursuant to the Subsidiary Agreement, annexed to the 2016 SPA and filed with the SEC, the subsidiaries "jointly and severally, unconditionally and irrevocably" guaranteed the obligations under the SPA. The guarantee was "absolute."  Each of the subsidiaries, including Rosetta Inc., represented and

warranted that Rosetta Ltd's representations and warranties "as they relate to such Guarantor, each of which is hereby incorporated herein by reference, are true and correct as of each time such representations are deemed to be made pursuant to such Purchase Agreement, and the Purchasers shall be entitled to rely on each of them as if they were fully set forth herein, provided that each reference in each such representation and warranty to the Company's knowledge shall, for the purposes reference to such Guarantor's knowledge."

61.     None of the subsidiaries, including Debtor, disclosed the foregoing material information regarding Reveal, the material decline in reimbursement rates and the material decline in revenue, and Defendants knowingly misrepresented the assets, revenues, liabilities, and business operations of Debtor.

62.     On March 30, 2017, Rosetta Ltd filed its 20-F for 2016, including its Consolidated Financial Statements.  Rosetta Ltd again materially misrepresented its revenues and liabilities and failed to disclose the false coding of Reveal and its material impact on Rosetta Ltd's assets, revenue, liabilities, operations, and solvency.  Rosetta Ltd's public statements and press releases continued to emphasize Reveal.  The 2017 20-F was certified by Defendants.

63.     In June 2017, Defendants learned the false coding of Reveal was under scrutiny, purported to launch an "internal investigation" of their Medicare billing practices, and purported to "fix" the coding.  On June 15, 2017, Defendant Berlin sent an email stating "[h]olding off billing Novitas for reveal claims right now, correct?"  The response to Berlin was "[y]es."  Defendants' contention that their third-party billing agent was solely responsible for the false coding and that they were unaware of it until June 2017 is inconsistent with the facts, incredible, and, if true, constitutes breach of fiduciary duty and recklessness.

64.     Prior to June 2017, Defendants knew or should have known that Reveal, which was not covered by an LCD, was being coded as Cancer Origin.  Defendants breached their fiduciary duties to Rosetta and their creditors, including Sabby, to whom they made extensive representations and warranties in seeking debt financing, to ensure the public statements, certified financial statements, certified registration statements, representations and warranties to third-party investors and lenders, and claims to commercial payors and Medicare were true and correct.  It is inconceivable that Defendants could have even cursorily performed their duties and still have been unaware that their primary remaining product was being reimbursed at vastly higher rates than expected because it was being submitted to Medicare under the name of an earlier, better-established and covered test.

65.     To the extent Defendants in fact ceased filing or causing Rosetta to file falsely coded Reveal claims, the economic impact on reimbursement rates and revenues was obvious, immediate and severe.  Perhaps for this reason, at least one Reveal test was falsely coded as "Cancer Origin" months after the "fix" in June 2017.  It was subjected to significantly greater scrutiny by Medicare's service providers, which were evidently aware by that time of the false claims under the LCD and denied on the ground that there was no basis for the "Cancer Origin" test.  Despite internal acknowledgement that Reveal should not be coded "Cancer Origin," Defendants appealed the determination repeatedly.

66.     Despite knowledge of these material facts, on August 3, 2017, Rosetta Ltd. entered into a second Securities Purchase Agreement with Sabby (the "August 3, 2017 SPA"), by which Sabby agreed to purchase (i) 138,000 Class A Units, each Class A Unit consisting of one Ordinary Share of Rosetta Ltd., par value NIS 7.2 per share, and one warrant to purchase 0.50 Ordinary Share, and (ii) up to 1,811,974 Class B Units, each Class B Unit consisting of a Series A Warrant

and one pre-funded warrant to purchase one Ordinary Share.  Each Class A Unit was sold at a public offering price of $1.40 and each Class B Unit was sold at a public offering price of $1.39. Sabby paid $2,711,844 for the Units.

67.     The August 3, 2017 SPA was signed by Defendant Berlin, who induced Sabby to enter it and failed to disclose the foregoing material information regarding Reveal, the material decline in reimbursement rates and the material decline in revenue.

68.     On September 28, 2017, Rosetta Ltd. entered a third Securities Purchase Agreement with Sabby, by which Sabby agreed to purchase (i) an aggregate principal amount of $2,000,000 of unregistered convertible debentures and (ii) warrants to purchase up to 2,173,914 ordinary shares with an initial exercise price of $1.15 per share. Sabby tendered $2,000,000 for the debentures and warrants.

69.     The August 3 and September 28, 2017 SPAs were signed by Defendant Berlin, who induced Sabby to enter them and failed to disclose the foregoing material information regarding Reveal, the material decline in reimbursement rates and the material decline in revenue.

70.     The terms, warranties and representations of the August 3 and September 28, 2017 SPAs were materially identical to the 2016 SPA, including the incorporation of the then-effective Registration Statement.  Defendants caused Rosetta Ltd to enter the August 3, 2017 and September 28, 2017 SPAs and to breach its representations and warranties by misrepresenting its revenues, assets and liabilities and failing to disclose the foregoing material information regarding Reveal, the material decline in reimbursement rates and the material decline in revenue.

71.     The September 28, 2017 SPA was guaranteed by Rosetta Ltd's subsidiaries pursuant to an agreement materially identical to the 2016 Guarantor Agreement, including the incorporation of Rosetta Ltd's representations and warranties.  None of the subsidiaries, including

Debtor, disclosed the foregoing material information regarding Reveal, the material decline in reimbursement rates and the material decline in revenue, and Defendants knowingly misrepresented the assets, revenues, liabilities, and business operations of Debtor.

72.    Sabby was induced to enter into the August 3 and September 28, 2017 SPAs by, and relied upon, financial statements, registration statements, public statements, and representations and warranties regarding Rosetta's business operations, liabilities, assets and revenues.  Each of these statements was knowingly false, overstated Rosetta Ltd's or Rosetta Inc's present and future revenue and failed to disclose that Defendants falsely coded the Reveal test as Cancer Origin in order to receive improper Medicare reimbursements, with immediate material impact on its present and future revenue and the value of its intellectual property in the Reveal test. Defendants were at all times aware that the Reveal test coding was likely to be discovered, materially impacting its current and future reimbursements and potentially leading to regulatory action.

73.    In connection with these securities transactions, Sabby tendered a total of $7,871,844 to Rosetta Ltd in exchange for the foregoing investments, based upon material misrepresentations of Rosetta's business operations, liabilities, assets and revenues and failure to disclose highly material adverse information concerning Reveal and the precipitous decline in reimbursement rates and revenues.

74.    On October 10, 2017, Rosetta Ltd. filed its Form 6-K with the SEC.  Therein Defendant Berlin stated "We are particularly pleased to report preliminary Reveal revenue for the third quarter of 2017 of approximately $860,000, representing growth of approximately 23% compared with the second quarter of 2017. With another strong quarter of revenue growth for Reveal, we remain confident that our differentiated assay has significant near- and long-term

revenue prospects with relatively high gross margins, which is why we believe Reveal provides the best path to profitability." The revenue derived from Reveal was a material portion of Rosetta Ltd's overall revenue. According to the Form 6-K, Reveal revenue was $699,000 for the second quarter of 2017 and $1.2 million for the first half of 2017. As such, Reveal revenue accounted for 80% of Rosetta Ltd's total gross revenue for the second quarter and 75% of its total gross revenue for the first half of 2017.

75.     Rosetta Ltd did not disclose its total gross revenue for the third quarter of 2017. In the October 10, 2017 Form 6-K, Rosetta Ltd stated that it "…suspend[ed] its previously announced 2017 revenue and unit guidance for Reveal, which was for revenue to be between $4.0 million and $5.0 million and the number of Reveal units processed to be between 2,500 and 3,500." Although Rosetta Ltd. represented that it "…intend[ed] to update its Reveal revenue and unit guidance by year-end 2017," it never did so. The prior revenue and unit guidance for Reveal was issued with full knowledge that Reveal was being miscoded in reimbursement claims to Medicare and that this was a material risk to existing revenue and forward-looking statements.

76.     Having signed this Form 6-K as well and other SEC filings, Defendant Berlin had a duty to familiarize himself with the facts relevant to the core operations of the Rosetta Ltd. and Debtor and the financial reporting of those operations. However, Defendant Berlin made statements concerning that financial reporting while ignoring reasonably available data that would have indicated that those statements were materially false or misleading, and, indeed, with actual knowledge that they were materially false or misleading. Berlin made the same knowingly materially false and misleading statements to Sabby in order to induce it to enter the Stock Purchase Agreements.

77.     Four months after their false Reveal claims either ceased or ceased to be reimbursed and with knowledge of the precipitous decline in reimbursements and revenue, Defendants caused Rosetta Ltd to file and Berlin certified a Form 6-K stating third quarter revenue, *following* the decline in reimbursements, approximately 25% *higher* than Rosetta Ltd's second quarter revenue, prior to the decline in reimbursements.  Defendants accomplished this by recognizing *100% of third quarter Medicare claims* as revenue, which (i) more than doubled the average reimbursement rate of Reveal since inception, a violation of GAAP rules so clear that Rosetta's accountant, Ernst and Young, later refused to explain it to Genoptix and (ii) was a knowing misrepresentation of Reveal's reimbursement rate when properly coded, which approached 0%.

78.     As set forth above, Defendants knowingly made numerous false and misleading statements and omitted material information in their own public statements, statements to creditors and investors, and statements to Genoptix; caused Rosetta Ltd to make false and misleading statements and omit material information in their public filings that Defendants certified; and caused Rosetta to make false and misleading statements and omit material information in their representations and warranties; and caused Rosetta to breach its representations and warranties. Defendants breached their fiduciary duties to Rosetta Ltd and Rosetta Inc, and their creditors, including Sabby, and committed gross negligence and fraud.

**<u>Genoptix</u>**

79.     On December 14, 2017 Rosetta Ltd. entered into an Agreement and Plan of Merger with Genoptix, a Delaware corporation.  The Agreement and Plan of Merger set forth the terms and conditions of a proposed acquisition of Rosetta Ltd., including its wholly-owned subsidiary, Debtor.  The Defendants never disclosed to Genoptix, at the time the Agreement and Plan of Merger was entered into or at any time thereafter, any adverse issues concerning the Reveal tests,

the internal "investigation," the decline in Medicare reimbursements, the decline in revenue or the materially misleading financial statements, Registration Statement, 2016 and 2017 Forms 6-K or 2016 Form 20-F.

80.    On January 22, 2018, Medicare, through its contractor, once again rejected a Reveal claim, this one for a test performed on December 21, 2017, yet again coded Cancer Origin.  Rosetta again appealed the decision.  On February 7, 2018, Medicare denied Rosetta Ltd.'s appeal.  None of this information was disclosed to Genoptix or Sabby.

81.    On February 22, 2018 Rosetta Ltd. held an Extraordinary General Meeting of Shareholders for the purpose of obtaining shareholder approval of the proposed merger with Genoptix.  However, the proposed merger did not obtain sufficient positive votes required for approval.

82.    On February 22, 2018, Genoptix terminated the Agreement and Plan of Merger but replaced it with a new Agreement and Plan of Merger (the "New Agreement and Plan of Merger"), which was entered into on February 27, 2018.  The material terms of the Agreement and Plan of Merger and the New Agreement and Plan of Merger, pertinent to this claim, are believed to have been the same, although the purchase price and closing date were changed.  The New Agreement and Plan of Merger was executed on behalf of Rosetta Ltd. by Defendant Berlin.  Although Medicare had denied Rosetta Ltd.'s appeal of the rejection of its Reveal test claim only 20 days earlier, Defendants never disclosed that fact to Genoptix when the New Agreement and Plan of Merger was entered into or thereafter.  Defendants also never disclosed to Genoptix, at the time New Agreement and Plan of Merger was entered into or at any time thereafter, any adverse issues concerning the Reveal tests, the internal investigation, the decline in Medicare reimbursements, the decline in revenue or the material misleading Form 6-K filed with the SEC and therefore the

representation and warranties contained in the Agreements were false and the conditions contained in the Agreements could not be met, as discussed below.

83.    Defendant Brian Markison approved the merger transaction with Genoptix and the Agreement and Plan of Merger and the New Agreement and Plan of Merger (collectively the "Agreements").  In this regard, the Agreements confirm that:

> WHEREAS, the board of directors of the Company [Rosetta, Ltd.] (the "Company Board") has unanimously (i) determined that this Agreement, the Merger and the other transactions contemplated by this Agreement are fair to, and in the best interests of, the Company and its shareholders and that, considering the financial position of the merging companies, no reasonable concern exists that the Surviving Company, will be unable to fulfill the obligations of the Company to its creditors; (ii) approve this Agreement, the Merger and the other transactions contemplated hereby; and (iii) determined to recommend that the shareholders of the Company approve this Agreement, the Merger and the other transactions contemplated hereby;

84.    Defendant Berlin approved the merger and the Agreements and executed the Agreements.

85.    As a "condition to and inducement of [Genoptix'] willingness to enter into [the New Agreement and Plan of Merger]" on February 27, 2018 Genoptix and Debtor entered into a Stock Purchase Agreement, which was executed for Debtor by Defendant Berlin.  Pursuant to the Stock Purchase Agreement, Debtor agreed to sell its indirect  Delaware subsidiary Minuet Diagnostics, Inc. (and therefore Minuet Diagnostics' Delaware subsidiary, CynoGen, Inc.) to Genoptix.  Minuet Diagnostics, Inc. was wholly owned by Debtor.  According to Rosetta Ltd's Form 20-F dated March 30, 2017, "CynoGen is a molecular diagnostics and services company serving community-based pathologists, urologists, oncologists and other reference laboratories across the United States. CynoGen is focused on the detection of genomic changes through Fluorescence in situ Hybridization ("FISH") technology, which helps to detect cancer, measure

the potential aggressiveness of the disease and identify patients most likely to respond to targeted therapies." This agreement was not contingent on the closing of the merger.  It was not customary in merger transactions and harmed Rosetta Ltd, Rosetta Inc and their creditors.  Section 6.11 of the Stock Purchase Agreement, provides, inter alia, that:

> (a) This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction).

> (b) ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF DELAWARE, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING. SERVICE OF PROCESS, SUMMONS, NOTICE OR OTHER DOCUMENT BY MAIL TO SUCH PARTY'S ADDRESS SET FORTH HEREIN SHALL BE EFFECTIVE SERVICE OF PROCESS FOR ANY SUIT, ACTION OR OTHER PROCEEDING BROUGHT IN ANY SUCH COURT. THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

86.    As a "condition to and inducement of [Genoptix'] willingness to enter into [Agreement and Plan of Merger]" on December 14, 2017 Genoptix and Debtor entered into (and on February 27, 2018 amended) a Loan and Security Agreement, which was executed for Debtor by Defendant Berlin.  Pursuant to the Loan and Security Agreement, as amended, Genoptix agreed to extend Debtor a bridge loan of up to $600,000 monthly, bearing simple interest of 10% per annum, potentially further indebting Debtor.  The bridge loan was secured by, among other things, the capital stock of Debtor and its subsidiaries.  These agreements were not contingent on the closing of the merger, which was not customary in merger transactions.

87.     Each of the Defendants acted in bad faith and had a self-interest in approving and causing Rosetta Ltd. to enter into these agreements in order to induce Genoptix to enter into the Agreement and Plan of Merger.  At that time, Defendant Berlin beneficially owned 45,318 shares of Rosetta Ltd., while Defendant Kalfus beneficially owned 2,838 shares.  As was eventually disclosed in Rosetta Ltd.'s Forms 6-K, the merger with Genoptix was the only way to save Rosetta Ltd. and in turn Debtor.  For instance, Rosetta Ltd's April 5, 2018 Form 6-K disclosed that "[i]f the merger is not adopted by the Company's shareholders or if the merger is not consummated for any other reason, the Company's shareholders will not receive any payment for their shares in connection with the merger. In addition, because of the Company's financial condition and continued operating losses, which, among other things, led the Company's board of directors to recommend the merger, we anticipate that we may be required to seek protection from our creditors, or an involuntary petition for bankruptcy may be filed against us in light of our financial condition. In such a case, it is unlikely that the Company's ordinary shares would have any value." Without inducing Genoptix to enter into the Agreement and Plan of Merger, there was no way for the merger to be consummated, which would likely result in Defendants' shares being worthless. As a result of Defendants' bad faith and self-interest, Rosetta Ltd, Rosetta Inc and their creditors have been harmed.

88.     Following its failure to gain approval of the proposed merger, Rosetta Ltd. through Defendant Berlin, solicited Sabby to purchase additional shares of Rosetta Ltd. in the open market. The purpose of this solicitation was to ensure sufficient votes in favor of the merger so as to secure shareholder approval of the merger.  Based on Defendant Berlin's misrepresentations and material omissions (as discussed below), Sabby agreed to purchase additional shares of Rosetta Ltd. at a total purchase price of $367,735 (the "Sabby 2018 Purchases").  According to the Schedule 13G

that Rosetta, Ltd. filed with the SEC on or about March 12, 2018, after these additional purchases,

Sabby held 351,372 shares of Rosetta Ltd. stock.  With the additional investments that Defendant

Berlin had solicited, Sabby's total investment in Rosetta Ltd. had increased to $8,239,579.

Although Medicare had denied Rosetta Ltd.'s appeal regarding the rejection of its Reveal test claim

only weeks earlier, Defendant Berlin never disclosed that fact to Sabby in connection with his

solicitation of Sabby to purchase additional shares of Rosetta Ltd. or at any time thereafter.

Defendant Berlin also never disclosed to Sabby, in connection with soliciting Sabby to purchase

additional shares of Rosetta Ltd. or thereafter, any adverse issues concerning the Reveal tests, the

internal investigation, the decline in Medicare reimbursements, the decline in revenue and the

material misleading Form 6-K filed with the SEC.  Defendant Berlin also failed to disclose to

Sabby at that time or at any time thereafter that the representations, warranties and conditions

contained in the Agreements, which he had approved and caused to executed, were false and could

not be met, as is discussed below.

89.     Pursuant to the terms of the New Agreement and Plan of Merger, upon the closing

of the merger, Rosetta Ltd., along with Debtor, would become a private wholly owned direct

subsidiary of Genoptix.

90.     The New Agreement and Plan of Merger was subsequently amended by agreement

dated March 11, 2018 and April 17, 2018.  The March 11, 2018 amendment was executed by

Defendant Berlin while the April 17, 2018 amendment was executed by Ron Kalfus, Chief

Financial Officer of Rosetta, Ltd.  These amendments did not materially change the provisions of

the New Agreement and Plan of Merger addressed below.  The amendments each included a

provision that "[e]xcept as expressly set forth in this Amendment…, the Agreement remains

unchanged and, as modified hereby, the Agreement shall remain in full force and effect."  The

Defendants never disclosed to Genoptix, at that the time the amendments were entered into or at any time thereafter, any adverse issues concerning the Reveal tests, the internal investigation, the decline in Medicare reimbursements, the decline in revenue or the material misleading Form 6-K filed with the SEC and therefore the representation and warranties contained in the Agreements and incorporated into the amendments, were false and the conditions contained in the Agreements and incorporated in the amendments, could not be met, as is discussed below.

91.    On April 26, 2018, Rosetta Ltd. held an Extraordinary General Meeting of Shareholders for the purpose of obtaining approval of the proposed merger with Genoptix.  With Sabby's additional purchase of shares, the proposed merger obtained sufficient positive votes and was approved.

92.    Rosetta Ltd., acting through Defendants, never informed Genoptix or Sabby of the material facts alleged herein.

93.    For at least two years prior to the New Agreement and Plan of Merger and thereafter, Debtor was insolvent.  Debtor's creditors were as follow:

Admera Health
Agilent Technologies, Inc.
Airgas East
Amanda Toke
American Express
American Express National Bank
American Express National Bank
American Express Travel Related Services Company Inc.
Anthony Lodise
Aramark Refreshment Services
Associate Imaging Solutions, Inc.
Associated Imaging Solutions
AT&T Mobility
Black Box Network Services
BlueEdge Consulting
Brenda Hall
Brian Langer
Brittany Ronto

Cameron Govert
Christopher T. Hogan
Cintas
Cogent Communications, Inc.
Commonwealth of PA – UCTS Dept. of Labor and Industry
Corporate Traveler
Darryl S. Laddin
De Lage Landen Financial Services
De Landen
Commonwealth of Pennsylvania, Department of Labor and Industry
Defero Pro
Denville Scientific, Inc.
Department of Labor, Division of Unemployment Insurance
Electron Microscopy Sciences
Eran Goran
Fisher Scientific Co., LLC
FNA Path
Genoptix, Inc.
GenOptix, Inc.
HA+W -Aprio
hc1.com
Health Equity
Heather Mitchell
High Availability, Inc.
Hila Benjamin
Independence Blue Cross, LLC
Integrated DNA Technologies, Inc.
Integrated Service Solutions, Inc.
Jian Xu
Karin Ashkenazi
Kellton Tech Inc.
Laz Parking
Life Technologies
Matthew G. Summers, Esq.
National Union Fire Insurance Company
New England Biolabs
Office Team
OfficeTeam
Olivia L. Dattner
Path-Tec
Path-Tec, LLC
Premier Source
Princeton Corporate Center Realty Assoc.
Ron Kalfus
Rosetta Genomics, Ltd.
Sabby Healthcare Master Fund, Ltd.

Sabby Volatility Warrant Master Fund, Ltd.
Scientific Apparatus Service, Inc.
Sean Purnell
Sigma Aldrich
Sigma-Aldrich, Inc.
Stage 1Diagnostics
State of Delaware, Division of Revenue
Takara Bio USA, Inc.
Teddy Erez, as Israeli Liquidator of Rosetta Genom
The Lash Group, LLC dba Premier Source
The Travelers Indemnity Company
The Travelers Indemnity Company and Property Casualty Insurance Affiliat
Three Independence
United Concordia
USA Scientific
USA Scientific, Inc.
Veolia
VWR International
W.B. Mason
Wexford-UCSC
Wexford-UCSC II, L.P.
Windstream
Yoav Sror

94.     Because Debtor was insolvent, Rosetta Ltd's Directors and Officers, including Berlin and Kalfus, owed duties to Debtor and its creditors independent of their duties owed to Rosetta Ltd.   As set forth herein, Berlin and Kalfus breached their duties to Debtor and its creditors, as well as their duties to Rosetta Ltd and its creditors.

95.     Shortly after entering into the Agreement and Plan of Merger, Genoptix began its due diligence.  In late May 2018, Genoptix learned of the facts alleged herein and exercised its rights under the New Agreement and Plan of Merger, as amended, and withdrew from the merger. Rosetta Ltd, Rosetta Inc and their creditors were damaged thereby.  In addition, the risk that Genoptix would learn of these facts and withdraw from the merger was material and foreseeable and should have been disclosed to Sabby.

96.     Defendant Berlin approved the merger and the Agreements and executed the Agreements, with the exception of the April 17, 2018 amendment thereto, which Defendant Kalfus executed.  Defendant Berlin also agreed to the sale of Debtor's subsidiaries (Minuet Diagnostics, Inc. and CynoGen, Inc.) and to further indebt Debtor in order to induce Genoptix to enter into the Agreements, thereby harming Rosetta Ltd, Rosetta Inc and their creditors.

97.     Defendants Berlin and Kalfus did so despite the above alleged facts.  In addition, subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed without informing Genoptix of the above alleged material facts.  Defendants Berlin and Kalfus did so either with the knowledge of the facts set forth above or did so having failed to inform themselves fully and in a deliberate manner of such facts.

98.     The Agreements contained section 2.5(a)(ii), by which Rosetta Ltd. represented and warranted, in pertinent part, that:

> [N]one of the Company SEC Documents [since December 31, 2014] contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statement therein, in the light of the circumstance under which they were made, not misleading in any material respect.

99.     Defendants Berlin and Kalfus each approved and/or caused Rosetta Ltd. to make the representations and warranties contained in section 2.5(a)(ii) while either knowing or having failed to inform themselves fully and in a deliberate manner of their falsity.  The Form 6-K, filed by Rosetta Ltd. on or about October 10, 2017, stated that its "Reveal revenue" for the third quarter of 2017 was "approximately $860,000," when these statements were untrue or omitted to state material facts as Reveal's revenue was materially lower.  Subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed, knowing or having failed

to inform themselves fully and in a deliberate manner of these facts and without informing Genoptix of them.

100.    The Agreements contained section 2.7(a), by which Rosetta Ltd. represented and warranted, in pertinent part, that:

> [T]he Company and the Company subsidiaries have conducted their respective businesses in the ordinary course and in accordance with past practices.

101.    Defendants Berlin and Kalfus each approved and/or caused Rosetta Ltd. to make the representations and warranties contained in section 2.7(a) while either knowing or having failed to inform themselves fully and in a deliberate manner of their falsity. The representations and warranties contained in section 2.7(a) were false as Rosetta Ltd. had conducted an internal investigation into potential billing irregularities, which was outside the "ordinary course" of Rosetta Ltd.'s business.  Subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed, knowing or having failed to inform themselves fully and in a deliberate manner of these facts and without informing Genoptix of them.

102.    The Agreements contained section 2.11, by which Rosetta Ltd. represented and warranted, in pertinent part, that:

> The Company has no accrued, contingent or other liabilities of any nature, either matured or unmatured, in each case whether or not required to be reflected in financial statements prepared in accordance with GAAP….

103.    Defendants Berlin and Kalfus each approved and/or caused Rosetta Ltd. to make the representations and warranties contained in section 2.11 while either knowing or having failed to inform themselves fully and in a deliberate manner of their falsity.  The representations and warranties made in section 2.11 were false as Rosetta Ltd. had contingent liabilities with respect to its Medicare billing practices related to the Reveal test.  The contingent liability with respect to

Rosetta Ltd.'s Medicare billing practiced related to the Reveal test, extended beyond those reference above.  Subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed knowing or having failed to inform themselves fully and in a deliberate manner of these facts and without informing Genoptix of them.

104.    The Agreements contained section 5.2, by which Rosetta Ltd. agreed to the condition that:

> No change, effect, event, fact, development, occurrence or circumstances shall have occurred that, individually or in the aggregate, has had, or would reasonably be expected to have, a Company Material Adverse Effect.

105.    A Company Material Adverse Effect is defined in section 1.2 of Exhibit A to the Agreements, in pertinent part, as:

> [A]ny effect, change, event, occurrence, condition, matter, circumstance or development that, individually or in the aggregate, has or would reasonably be expected to have a material adverse effect on: (i) the assets, financial condition, or results of operations of the Company and the Company Subsidiaries, taken as a whole; or (ii) the ability of the Company to consummate the transactions contemplated by this Agreement prior to the Outside Date….

106.    Defendants Berlin and Kalfus each approved and/or caused Rosetta Ltd. to enter in the Agreements containing the conditions in section 5.2 while either knowing or having failed to inform themselves fully and in a deliberate manner that Rosetta Ltd. could not comply with said conditions as a Company Material Adverse Effect had occurred, including but not limited to the decline in Medicare reimbursements for Reveal tests beginning in June 2017.  Subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed knowing or having failed to inform themselves fully and in a deliberate manner that Rosetta Ltd. could not comply with said conditions and without informing Genoptix of same.

107.    On May 22, 2018, after it first began to learn the above alleged facts, Genoptix provided notice to Rosetta Ltd. of its discovery of Rosetta Ltd.'s material misrepresentations regarding revenue, potential Federal False Claims Act liability, material adverse effects and breaches of representations and warranties.

108.    On May 25, 2018, Genoptix provided detail as to the representations, warranties and conditions that Rosetta Ltd had breached and the facts underlying each breach.  Genoptix also made clear that Rosetta Ltd.'s May 23, 2018 letter was the first time Rosetta Ltd. had disclosed its June 2017 "internal investigation" to Genoptix.  Genoptix also alerted Rosetta Ltd. to the fact that on May 24, 2018, it had discovered Medicare's denial of Rosetta Ltd.'s appeal on February 7, 2018.

109.    On May 29, 2018 Genoptix responded and asserted that it had provided documentation to Rosetta Ltd. demonstrating that Rosetta Ltd. had "mischaracterized hundreds of its Reveal thyroid tests as 'Cancer Origin' tests in claims submitted to the U.S. government." Shortly thereafter, Genoptix exercised its rights under the New Agreement and Plan of Merger, as amended, and withdrew from the merger.  This was followed by Rosetta Ltd. and Debtor filing for Chapter 7 Bankruptcy liquidation.

## COUNT I
## BREACH OF FIDUCIARY DUTY (Debtor and Sabby)
### (As Against Defendants Berlin and Kalfus)

110.    The Trustee repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

111.    As officers and/or directors of Debtor, Defendants Berlin and Kalfus owed a fiduciary duty to Debtor and its creditors.  As such, Defendants Berlin and Kalfus owed Debtor the duties of due care, loyalty and good faith.

112.    As set forth herein, Defendants caused Rosetta to file false claims on Reveal to commercial payors and Medicare; knowingly made numerous false and misleading statements and omitted material information in their own public statements, statements to creditors and investors, and statements to Genoptix; caused Rosetta Ltd to make false and misleading statements and omit material information in their public filings that Defendants certified; and caused Rosetta to make false and misleading statements and omit material information in their representations and warranties; and caused Rosetta to breach their representations and warranties.  Defendants thereby breached their fiduciary duties to Debtor and its creditors, including Sabby.

113.    Defendants knowingly made numerous false and misleading statements and caused Rosetta to make numerous false and misleading statements to Genoptix to induce it to enter into the Merger Agreement.  Defendants caused Rosetta Ltd to pursue a merger with Genoptix they knew or should have known would not be consummated once Genoptix discovered their material misrepresentations and omissions, wasting numerous assets, including assets of Debtor sold to Genoptix for the sole purpose of securing the merger, and ultimately driving Rosetta into bankruptcy.  Defendants thereby breached their fiduciary duties to Debtor and its creditors, including Sabby.

114.    Defendants Berlin and Kalfus further breached their respective fiduciary duties by, among other things, failing to adequately apprise themselves of the operations of Debtor and Rosetta Ltd and their signature product, their compliance with Medicare and commercial insurance rules, and the truthfulness and accuracy of its reimbursement claims and statements to payors, regulators, investors, creditors, and the public.

115. Defendants Berlin's and Kalfus' acts and omissions were adverse to the best interests of Debtor and were neither intended to nor did confer any benefit on Debtor or its creditors.

116. Defendants Berlin and Kalfus were grossly negligent and/or acted with reckless disregard or in bad faith in the discharge of their duties.

117. Until such time as Genoptix withdrew from the merger and information regarding the Reveal issue became known, Defendants Berlin's and Kalfus' breaches of fiduciary duty were concealed, and the injuries of such breaches were inherently unknowable.

118. As a direct and proximate result of the breaches of fiduciary duty of the Defendants Berlin and Kalfus, the enterprise value of Debtor was substantially diminished, and the creditors were damaged thereby.

## COUNT II
## GROSS NEGLIGENCE (Debtor and Sabby)
### (As against Defendants Berlin and Kalfus)

119. The Trustee repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

120. As officers and directors of Debtor, Defendants each owed a duty of care to Debtor and its creditors, including Sabby.

121. As set forth above, Defendants violated the duty of care they owed to Debtor and its creditors when they departed from the ordinary standard of care by knowingly or recklessly causing Rosetta to file false claims for reimbursement of Reveal tests and/or failing to discover and rectify the filing of false claims; causing Rosetta Ltd to make false and misleading statements and omit material information in its public filings, which Defendants certified; caused Rosetta to make false and misleading statements and omit material information in their representations and

warranties; and caused Rosetta to breach their representations and warranties. Defendants thereby breached their duty of care to Debtor and its creditors, including Sabby.

122.    As set forth above, Defendants violated the duty of care they owed to Debtor and its creditors when they departed from the ordinary standard of care by approving and/or causing Rosetta Ltd. to enter into the Agreements containing representation and warranties that were false, failing to make material disclosures and pursuing a merger that was made futile thereby. Defendants also violated the duty of care they owed to Debtor and its creditors when they departed from the ordinary standard of care by approving and/or causing Rosetta Ltd to enter into the Agreements containing conditions that Rosetta Ltd could not comply with. Defendant Berlin also violated the duty of care he owed to Debtor and its creditors when he agreed to the sale of Debtor's subsidiaries (Minuet Diagnostics, Inc. and CynoGen, Inc.) and to further indebt Debtor in order to induce Genoptix to enter into the Agreements.

123.    Defendants Berlin and Kalfus violated the duty of care they owed to Debtor and its creditors when they departed from the ordinary standard of care after the Agreements were entered into by causing the merger to proceed knowing or having failed to inform themselves fully and in a deliberate manner of the above alleged facts and without informing Genoptix of them.

124.    By approving and/or causing Rosetta Ltd to enter into the Agreements containing representations and warranties that were false, containing conditions that Rosetta Ltd could not comply with and causing the merger to proceed, Defendants Berlin and Kalfus acted outside the bounds of reason. Alternatively, Defendants Berlin and Kalfus failed to inform themselves fully and in a deliberate manner of the facts alleged above, the falsity of the representations and warranties that they approved and/or caused Rosetta Ltd to make to Genoptix and the inability of

Rosetta Ltd. to comply with the conditions that Defendants approved and/or caused Rosetta Ltd to agree to in the Agreements.

125.    Each of the facts alleged above were material and reasonably available to Defendants Berlin and Kalfus in light of the fact that they concerned the revenue of Rosetta Ltd's diagnostic test that, according to its Form 6-K filed on October 10, 2017, was believed to "provide[] the best path to profitability."  Moreover, the facts alleged above were all reasonably available to and knowable by Defendants Berlin and Kalfus as they relate to the revenue received and to be received from Rosetta Ltd's "path to profitability" diagnostic test, an internal investigation into the billing practices that drove the revenue of that test, and the contingent liability that stemmed from the revenue previously received from that test.  Given the material nature of these facts and the ability of Defendants Berlin and Kalfus to learn these facts, if they did not know them, they were recklessly uninformed.

126.    As Genoptix stated in its May 25, 2018 letter to Rosetta Ltd "[i]n light of the new information that we are continuing to discover, and the new information that were are continuing to discovery, including that a previously undisclosed investigation was launched into Rosetta's billing practices last summer, we will take this opportunity to set forth Genoptix's principle concerns as they presently exist: [Breaches of Representation and Warranties, Company Material Adverse Effect, Knowingly False Representations and Omissions and Damages Incurred by Rosetta's Misconduct]."  When each of these facts finally became apparent to Genoptix, it decided to back out of the merger.  But for Defendants Berlin's and Kalfus' gross negligence, Genoptix would not have backed out of the merger when it did.  After the merger failed, Rosetta Ltd and Debtor were forced to file for Chapter 7 Bankruptcy liquidation.

127.    Until such time as Genoptix withdrew from the merger and the false Reveal claims became known, Defendants Berlin's and Kalfus' gross negligence was concealed and the injuries were inherently unknowable.

128.    As a result of Defendants Berlin's and Kalfus' gross negligence, Debtor and its creditors, including Sabby, have been damaged.

## COUNT III
## BREACH OF FIDUCIARY DUTY (Rosetta Ltd)
### (As Against All Defendants)

129.    The Trustee repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

130.    As officers and/or directors of Rosetta Ltd, Defendants owed fiduciary duties to Rosetta Ltd and its creditors.  As such, Defendants owed Rosetta Ltd the duties of due care, loyalty and good faith.

131.    As set forth herein, Defendants caused Rosetta to file false claims on Reveal to commercial payors and Medicare; knowingly made numerous false and misleading statements and omitted material information in their own public statements, statements to creditors and investors, and statements to Genoptix; caused Rosetta Ltd to make false and misleading statements and omit material information in their public filings that Defendants certified; and caused Rosetta Ltd to make false and misleading statements and omit material information in their representations and warranties; and caused Rosetta Ltd to breach its representations and warranties.  Defendants thereby breached their fiduciary duties to Rosetta Ltd and its creditors, including Sabby.

132.    Defendants knowingly made numerous false and misleading statements and caused Rosetta Ltd to make numerous false and misleading statements to Genoptix to induce it to enter into the Merger Agreement.  Defendants caused Rosetta Ltd to pursue a merger with Genoptix

they knew or should have known would not be consummated once Genoptix discovered their material misrepresentations and omissions, wasting numerous assets, including assets of Debtor sold to Genoptix for the sole purpose of securing the merger, and ultimately driving Rosetta Ltd into bankruptcy. Defendants thereby breached their fiduciary duties to Rosetta Ltd and its creditors, including Sabby.

133.    Defendants further breached their respective fiduciary duties by, among other things, failing to adequately apprise themselves of the operations of Rosetta Ltd, its subsidiaries and its signature product, its compliance with Medicare and commercial insurance rules, and the truthfulness and accuracy of its reimbursement claims and statements to payors, regulators, investors, creditors, and the public.

134.    Defendants' acts and omissions were adverse to the best interests of Rosetta Ltd and were neither intended to nor did confer any benefit on Rosetta Ltd or its creditors.

135.    Defendants were grossly negligent and/or acted with reckless disregard or in bad faith in the discharge of their duties.

136.    Until such time as Genoptix withdrew from the merger and information regarding the Reveal issue became known, Defendants breaches of fiduciary duty were concealed and the injuries of such breaches were inherently unknowable.

137.    As a direct and proximate result of the breaches of fiduciary duty of the Defendants, the enterprise value of Rosetta Ltd was substantially diminished, and the creditors were damaged thereby.

**COUNT IV**
**GROSS NEGLIGENCE (Rosetta Ltd)**
**(As against All Defendants)**

138.    The Trustee repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

139.    As officers and directors of Rosetta Ltd, Defendants each owed a duty of care to Rosetta Ltd and its creditors, including Sabby.

140.    As set forth above, Defendants violated the duty of care they owed to Rosetta Ltd and its creditors when they departed from the ordinary standard of care by knowingly or recklessly causing Rosetta to file false claims for reimbursement of Reveal tests and/or failing to discover and rectify the filing of false claims; causing Rosetta Ltd to make false and misleading statements and omit material information in their public filings, which Defendants certified; caused Rosetta Ltd to make false and misleading statements and omit material information in their representations and warranties; and caused Rosetta Ltd to breach its representations and warranties.  Defendants thereby breached their duty of care to Rosetta Ltd and its creditors, including Sabby.

141.    As set forth above, Defendants violated the duty of care they owed to Rosetta Ltd and its creditors when they departed from the ordinary standard of care by approving and/or causing Rosetta Ltd to enter into the Agreements containing representation and warranties that were false, failing to make material disclosures and pursuing a merger that was made futile thereby. Defendants also violated the duty of care they owed to Rosetta Ltd and its creditors when they departed from the ordinary standard of care by approving and/or causing Rosetta Ltd to enter into the Agreements containing conditions that Rosetta Ltd could not comply with.  Defendant Berlin also violated the duty of care he owed to Rosetta and its creditors when he agreed to the sale of

Debtor's subsidiaries (Minuet Diagnostics, Inc. and CynoGen, Inc.) and to further indebt Rosetta

Ltd in order to induce Genoptix to enter into the Agreements.

142.    Defendants violated the duty of care they owed to Rosetta Ltd and its creditors

when they departed from the ordinary standard of care after the Agreements were entered into by

causing the merger to proceed knowing or having failed to inform themselves fully and in a

deliberate manner of the above alleged facts and without informing Genoptix of them.

143.    By approving and/or causing Rosetta Ltd to enter into the Agreements containing

representations and warranties that were false, containing conditions that Rosetta Ltd could not

comply with and causing the merger to proceed, Defendants acted outside the bounds of reason.

Alternatively, Defendants failed to inform themselves fully and in a deliberate manner of the facts

alleged above, the falsity of the representations and warranties that they approved and/or caused

Rosetta Ltd to make to Genoptix and the inability of Rosetta Ltd to comply with the conditions

that Defendants approved and/or caused Rosetta Ltd to agree to in the Agreements.

144.    Each of the facts alleged above were material and reasonably available to

Defendants in light of the fact that they concerned the revenue of Rosetta Ltd's diagnostic test that,

according to its Form 6-K filed on October 10, 2017, was believed to "provide[] the best path to

profitability."  Moreover, the facts alleged above were all reasonably available to and knowable

by Defendants as they relate to the revenue received and to be received from Rosetta Ltd's "path

to profitability" diagnostic test, an internal investigation into the billing practices that drove the

revenue of that test, and the contingent liability that stemmed from the revenue previously received

from that test.  Given the material nature of these facts and the ability of Defendants to learn these

facts, if they did not know them, they were recklessly uninformed.

145.     As Genoptix stated in its May 25, 2018 letter to Rosetta Ltd "[i]n light of the new information that we are continuing to discover, and the new information that were are continuing to discovery, including that a previously undisclosed investigation was launched into Rosetta Ltd's billing practices last summer, we will take this opportunity to set forth Genoptix's principle concerns as they presently exist: [Breaches of Representation and Warranties, Company Material Adverse Effect, Knowingly False Representations and Omissions and Damages Incurred by Rosetta Ltd's Misconduct]."  When each of these facts finally became apparent to Genoptix, it decided to back out of the merger.  But for Defendants' gross negligence, Genoptix would not have backed out of the merger when it did.  After the merger failed, Rosetta Ltd and Debtor were forced to file for Chapter 7 Bankruptcy liquidation.

146.     Until such time as Genoptix withdrew from the merger and the false Reveal claims became known, Defendants' gross negligence was concealed and the injuries were inherently unknowable.

147.     As a result of Defendants' gross negligence, Rosetta Ltd and its creditors, including Sabby, have been damaged.

**COUNT V**
**FRAUD (Debtor)**
**(As Against all Defendants)**

148.     The Trustee repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

149.     As set forth herein, Defendants caused Debtor to file false claims on Reveal to commercial payors and Medicare; knowingly made numerous false and misleading statements and omitted material information in their own public statements, statements to creditors and investors, and statements to Genoptix; caused Rosetta Ltd to make false and misleading statements and omit

material information in its public filings that Defendants certified; and caused Rosetta to make false and misleading statements and omit material information in their representations and warranties; and caused Rosetta to breach its representations and warranties.

150.    Defendants thereby induced Sabby to enter into the SPAs.  Sabby relied, and was entitled to rely, upon Defendants' representations and was damaged thereby.

151.    Defendants knowingly made numerous false and misleading statements, and caused Rosetta Ltd to make numerous false and misleading statements, to Genoptix to induce it to enter into the Merger Agreement.  Defendants caused Rosetta to pursue a merger with Genoptix they knew or should have known would not be consummated once Genoptix discovered their material misrepresentations and omissions, wasting numerous assets, including assets of Debtor sold to Genoptix for the sole purpose of securing the merger, and ultimately driving Debtor into bankruptcy.

152.    Defendants thereby induced Genoptix to enter into the Merger Agreements and various other financing and asset purchase agreements, and induced its creditors and shareholders to consent to those agreements.  Genotpix and Debtor's shareholders creditors relied, and were entitled to rely, upon Defendants' representations and were damaged thereby.

153.    Defendants' fraud incurred significant liabilities and caused damage to Debtor and its creditors.

154.    Each of the facts that Defendants misrepresented and/or omitted in public statements and filings concerned the revenue of Rosetta's diagnostic test.  Each of the facts were material as Reveal and the revenue derived therefrom accounted for the majority of Rosetta Ltd's gross revenue and was believed to "provide[] the best path to profitability" according to Defendant Berlin and Rosetta Ltd as represented in its Form 6-K filed on October 16, 2017.  The

misrepresented and/or omitted facts relate to the revenue received and to be received from Rosetta Ltd's "path to profitability" diagnostic test, an internal investigation into the billing practices that drove the revenue of that test, and the contingent liability that stemmed from the revenue previously received from that test.

155.    Until such time as Genoptix withdrew from the merger, Defendants' fraud was concealed and the injuries were inherently unknowable.

156.    As a result of the foregoing, which was revealed when Genoptix backed out of the merger in late May 2018, Debtor and Debtor's creditors have suffered damages as a result.

**COUNT VI**
**FRAUD (Rosetta Ltd)**
**(As Against all Defendants)**

157.    The Trustee repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

158.    As set forth herein, Defendants caused Debtor to file false claims on Reveal to commercial payors and Medicare; knowingly made numerous false and misleading statements and omitted material information in their own public statements, statements to creditors and investors, and statements to Genoptix; caused Rosetta Ltd to make false and misleading statements and omit material information in its public filings that Defendants certified; and caused Rosetta to make false and misleading statements and omit material information in their representations and warranties; and caused Rosetta to breach its representations and warranties.

159.    Defendants thereby induced Sabby to enter into the SPAs.  Sabby relied, and was entitled to rely, upon Defendants' representations and was damaged thereby.

160.    Defendants knowingly made numerous false and misleading statements, and caused Rosetta Ltd to make numerous false and misleading statements, to Genoptix to induce it to enter

into the Merger Agreement.  Defendants caused Rosetta to pursue a merger with Genoptix they knew or should have known would not be consummated once Genoptix discovered their material misrepresentations and omissions, wasting numerous assets, including assets of Debtor sold to Genoptix for the sole purpose of securing the merger, and ultimately driving Rosetta Ltd into bankruptcy.

161.    Defendants thereby induced Genoptix to enter into the Merger Agreements and various other financing and asset purchase agreements, and induced its creditors and shareholders to consent to those agreements.  Genotpix and Rosetta Ltd's shareholders and creditors relied, and were entitled to rely, upon Defendants' representations and were damaged thereby.

162.    Defendants' fraud incurred significant liabilities and caused damage to Rosetta Ltd and its creditors.

163.    Each of the facts that Defendants misrepresented and/or omitted in public statements and filings concerned the revenue of Rosetta's diagnostic test.  Each of the facts were material as Reveal and the revenue derived therefrom accounted for the majority of Rosetta Ltd's gross revenue and was believed to "provide[] the best path to profitability" according to Defendant Berlin and Rosetta Ltd as represented in its Form 6-K filed on October 16, 2017.  The misrepresented and/or omitted facts relate to the revenue received and to be received from Rosetta Ltd's "path to profitability" diagnostic test, an internal investigation into the billing practices that drove the revenue of that test, and the contingent liability that stemmed from the revenue previously received from that test.

164.    Until such time as Genoptix withdrew from the merger, Defendants' fraud was concealed and the injuries were inherently unknowable.

165.    As a result of the foregoing, which was revealed when Genoptix backed out of the merger in late May 2018, Rosetta Ltd and its creditors have suffered damages as a result.

## COUNT VII
## NEGLIGENT MISREPRESENTATION (Rosetta Ltd)
### (As against All Defendants)

166.    The Trustee repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

167.    As officers and directors of Rosetta Ltd, Defendants each owed a duty of care to Rosetta Ltd and its creditors.

168.    As set forth above, Defendants violated the duty of care they owed to Rosetta Ltd and its creditors when they departed from the ordinary standard of care by causing Rosetta to file false claims for reimbursement of Reveal tests and/or failing to discover and rectify the filing of false claims; causing Rosetta Ltd to make false and misleading statements and omit material information in their public filings, which Defendants certified; causing Rosetta Ltd to make false and misleading statements and omit material information in their representations and warranties; and causing Rosetta Ltd to breach its representations and warranties.  Defendants thereby breached their duty of care to Rosetta Ltd and its creditors, including Sabby.

169.    As set forth above, Defendants violated the duty of care they owed to Rosetta Ltd and its creditors when they departed from the ordinary standard of care by approving and/or causing Rosetta Ltd to enter into the Agreements containing representation and warranties that were false, failing to make material disclosures and pursuing a merger that was made futile thereby. Defendants also violated the duty of care they owed to Rosetta Ltd and its creditors when they departed from the ordinary standard of care by approving and/or causing Rosetta Ltd to enter into the Agreements containing conditions that Rosetta Ltd could not comply with.  Defendant Berlin

also violated the duty of care he owed to Rosetta and its creditors when he agreed to the sale of

Debtor's subsidiaries (Minuet Diagnostics, Inc. and CynoGen, Inc.) and to further indebt Rosetta

Ltd in order to induce Genoptix to enter into the Agreements.

170.    Defendants violated the duty of care they owed to Rosetta Ltd and its creditors

when they departed from the ordinary standard of care after the Agreements were entered into by

causing the merger to proceed knowing or having failed to inform themselves fully and in a

deliberate manner of the above alleged facts and without informing Genoptix of them.

171.    By approving and/or causing Rosetta Ltd to enter into the Agreements containing

representations and warranties that were false, containing conditions that Rosetta Ltd could not

comply with and causing the merger to proceed, Defendants acted outside the bounds of reason.

Alternatively, Defendants failed to inform themselves fully and in a deliberate manner of the facts

alleged above, the falsity of the representations and warranties that they approved and/or caused

Rosetta Ltd to make to Genoptix and the inability of Rosetta Ltd to comply with the conditions

that Defendants approved and/or caused Rosetta Ltd to agree to in the Agreements.

172.    Each of the facts alleged above were material and reasonably available to

Defendants in light of the fact that they concerned the revenue of Rosetta Ltd's diagnostic test that,

according to its Form 6-K filed on October 10, 2017, was believed to "provide[] the best path to

profitability."  Moreover, the facts alleged above were all reasonably available to and knowable

by Defendants as they relate to the revenue received and to be received from Rosetta Ltd's "path

to profitability" diagnostic test, an internal investigation into the billing practices that drove the

revenue of that test, and the contingent liability that stemmed from the revenue previously received

from that test.  Given the material nature of these facts and the ability of Defendants to learn these

facts if they did not know them, they breached their obligations to Rosetta Ltd and its creditors by remaining uninformed.

173.    As Genoptix stated in its May 25, 2018 letter to Rosetta Ltd "[i]n light of the new information that we are continuing to discover, and the new information that were are continuing to discovery, including that a previously undisclosed investigation was launched into Rosetta Ltd's billing practices last summer, we will take this opportunity to set forth Genoptix's principle concerns as they presently exist: [Breaches of Representation and Warranties, Company Material Adverse Effect, Knowingly False Representations and Omissions and Damages Incurred by Rosetta Ltd's Misconduct]."  When each of these facts finally became apparent to Genoptix, it decided to back out of the merger.  But for Defendants' misrepresentations and omissions, Genoptix would not have backed out of the merger when it did.  After the merger failed, Rosetta Ltd and Debtor were forced to file for Chapter 7 Bankruptcy liquidation.

174.    Until such time as Genoptix withdrew from the merger and the false Reveal claims became known, Defendants' negligence was concealed and the injuries were inherently unknowable.

175.    As a result of Defendants' negligent misrepresentations and omissions, Rosetta Ltd and its creditors, including Sabby, have been damaged.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee demands judgment against the Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, out-of-pocket fees, costs and expenses attributable to and incurred or paid by Debtor and the Trustee, and all attributable attorneys' fees, costs and expenses, as well as pre-judgment interest, court costs and

such other relief as is just and equitable. The Trustee reserves the right to seek punitive damages

at the appropriate time.


Dated:  April 12, 2023                     **LAX & NEVILLE, LLP**

                                           */s/ Barry R. Lax*
                                           Barry R. Lax, Esq.
                                           350 Fifth Ave.
                                           Suite 4640
                                           New York, NY 10118
                                           Telephone: 212-696-1999
                                           Facsimile: 212-566-4531
                                           Email: blax@laxneville.com

                                           *Special Litigation Counsel to*
                                           *Don A. Beskrone, Chapter 7*
                                           *Trustee of the Debtor*

                                            -and-

                                           **ASHBY & GEDDES, P.A.**


                                           */s/ Benjamin W. Keenan*
                                           Ricardo Palacio (DE No. 3765)
                                           Benjamin W. Keenan (DE No. 4724)
                                           500 Delaware Avenue, 8th Floor
                                           P.O. Box 1150
                                           Wilmington, Delaware 19899
                                           Telephone: (302) 654-1888
                                           Email: rpalacio@ashbygeddes.com
                                                   bkeenan@ashbygeddes.com

                                           *Counsel to Don A. Beskrone,*
                                           *Chapter 7 Trustee of the Debtor*